```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF VIRGINIA

                        Alexandria Division


JOSEPH HOGAN,                     )
                                  )
     Petitioner,                  )
                                  )
          v.                      )    1:16cv1538 (JCC/JFA)
                                  )
MARILUZ HOGAN,                    )
                                  )
     Respondent.                  )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Respondent Mariluz Hogan's Motion to Dismiss [Dkt. 29] Petitioner Joseph Hogan's Petition under the Hague Convention on the Civil Aspects of International Child Abduction. For the following reasons, the Court will deny Respondent's Motion.

## I. Background

The following facts are taken as true for purposes of the preset Motion. See *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

Petitioner and Respondent married in 2001. Both are U.S. citizens, and Petitioner is additionally a citizen of Brazil. Petitioner and Respondent have two children together, GTH and JWH, who are citizens of both the United States and Brazil.

Respondent is employed by U.S. Immigration and Customs Enforcement. In 2012, Respondent accepted a three-year assignment in Spain as an attaché to the United States embassy in that country. Petitioner and the couple's two children relocated to Spain in June of 2013, where the family resided for the following three years.

Shortly before her assignment was to expire, Respondent informed Petitioner that she intended to file for divorce, seek a new job, and relocate their children to the United States. Petitioner objected to the removal of their children from Spain, as they were thriving in their Spanish community.

Several weeks later, in the early hours of November 17, 2016, Respondent removed the children from their home in Spain without warning and took them to the airport. Despite Petitioner's efforts, Respondent then flew with the children to the United States. She has since resided with them in this district. Respondent's assignment in Spain has now terminated, and Respondent intends to remain in the United States with the children against Petitioner's wishes.

On November 29, 2016, Petitioner filed a Petition under the Hague Convention on the Civil Aspects of International Child Abduction seeking the return of the children to Spain. The Petition was transferred from the U.S. District Court for

the District of Columbia to this Court, and Respondent now moves to dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Legal Standard

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; 'importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). In reviewing a motion brought under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted). Generally, the Court may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## III. Analysis

Petitioner asks that the Court order his children returned to Spain pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, a treaty intended to "deter parents from taking children across international boundaries in search of a more sympathetic court to resolve

3

custody disputes." *Alcala v. Hernandez*, 826 F.3d 161, 169 (4th Cir. 2016), *cert. denied*, 137 S. Ct. 393 (2016). "The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence." *Abbott v. Abbott*, 560 U.S. 1, 20 (2010). The primary remedy available under the Convention is a court order mandating the return of a child to their country of habitual residence. "Importantly, the return remedy does not alter the pre-existing allocation of custody rights between parents; the Convention generally leaves ultimate custodial decisions to the courts of the country of habitual residence." *Alcala*, 826 F.3d at 169.

As an initial matter, Petitioner filed an Amended Petition [Dkt. 33] on the eve of the hearing on this Motion. "[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect." *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (citation omitted). Under other circumstances this might warrant denying Respondent's Motion to Dismiss, which is directed to Petitioner's original, null Petition. Here, however, the Amended Petition merely adds allegations incorporating factual contentions raised in Respondent's Motion. The Court therefore treats the Motion as directed to the Amended, operative Petition.

Turning to the merits of Respondent's Motion, the Court's analysis is complicated by what seems to be a substantial gulf between the argument advanced in the Motion itself and Respondent's position at oral argument. Respondent's Motion appears to take as its premise that Respondent is presently entitled to diplomatic immunity in Spain. Certainly that was the understanding of the Court, as well as Petitioner's understanding in responding to the Motion. *See* Opp. [Dkt. 34] at 11-15. At oral argument, however, Respondent's counsel conceded that neither Respondent, nor her family, presently enjoys diplomatic immunity in Spain. This concession is nowhere in the Motion itself, which repeatedly refers to Respondent's diplomatic immunity in the present tense. *See, e.g.*, Mot [Dkt. 29] at 3 ("The Respondent's family members, including the children at issue herein *enjoy* precisely the same privileges and immunities as their diplomat Mother. This immunity *acts* as a legal barrier which *precludes* any Spanish court from exercising personal jurisdiction over Respondent as well as the parties' children.") (emphasis added). For the sake of thoroughness, the Court addresses both arguments.

Respondent's Motion argues that the Petition must be dismissed because the Hague Convention is "inapplicable" to the custody dispute underlying the Petition. Specifically, Respondent's Motion contends that she and her family are

5

entitled to diplomatic immunity in Spain under the Vienna Convention on Diplomatic Relations due to Respondent's work as an attaché to the United States embassy.  The Motion claims that because her family cannot be haled into Court in Spain, "no Spanish court has jurisdiction to issue an enforceable custody order" should the Court order the children returned to that country.  This would therefore thwart the purpose of ordering the children returned under the Hague Convention.

      The Court finds that Respondent fails to establish that she presently enjoys diplomatic immunity in Spain. Respondent's diplomatic position was of limited duration and its term has expired.  A letter attached as an Exhibit to Respondent's Motion states that she ceased working as an attaché to the United States embassy in Spain on December 14, 2016. Article 39 of the Vienna Convention on Diplomatic Relations provides that "[w]hen the functions of a person enjoying privileges and immunities have come to an end, such privileges and immunities shall normally cease at the moment when he leaves the country, or on expiry of a reasonable period in which to do so."  See also Raya v. Clinton, 703 F. Supp. 2d 569, 578 (W.D. Va. 2010).  As Respondent's position with the embassy has terminated and she has left Spain – apparently for good – Respondent's diplomatic immunity in Spain has come to an end.

6

Accordingly, diplomatic immunity would not bar custody proceedings initiated in that country.

As noted above, Respondent raised a new argument at the hearing on this matter. Admitting that neither she nor her family is presently entitled to diplomatic immunity in Spain, she claims that her earlier immunity prevented her children from accruing "habitual residence" status in that country. She contends that her diplomatic immunity created a "bubble" around her family, such that they could not be considered to reside in Spain in a legal sense.

Respondent, however, admits that she has no legal authority to support this novel proposition, and the Court finds her argument unpersuasive. Whether a particular place may be considered a child's habitual residence is determined by looking to the parents' intentions and the child's acclimatization to the community. *See Maxwell v. Maxwell*, 588 F.3d 245, 251 (4th Cir. 2009). This is a factual rather than legal inquiry, *see Reyes v. Jeffcoat*, 548 F. App'x 887, 891 (4th Cir. 2013), that focuses on the practical reality of a child's situation, and to which a child's legal standing in the community is, in and of itself, largely irrelevant. *Cf. Mozes v. Mozes*, 239 F.3d 1067, 1082 n.45 (9th Cir. 2001) (noting that "an unlawful or precarious immigration status does not preclude one from becoming a habitual resident under the Convention"). Whether or

7

not Respondent's children resided in Spain in an abstract legal sense, they did so in reality. Only the latter is relevant to habitual residence under the Hague Convention. *See Redmond v. Redmond*, 724 F.3d 729, 732 (7th Cir. 2013) ("The determination of habitual residence under the Hague Convention is a practical, flexible, factual inquiry[.]").

The Court notes as well that "habitual residence" was deliberately left undefined by the drafters of the Hague Convention to avoid "technical rules which can produce rigidity and inconsistencies as between different legal systems." *Mozes*, 239 F.3d at 1071 (citations omitted); *see also Maxwell*, 588 F.3d at 251 ("The framers of The Hague Convention intentionally left 'habitual residence' undefined, and intended that the term be defined by the unique facts in each case."). Respondent urges the Court to adopt an idiosyncratic, legalistic view of habitual residence that exempts a particular class of children without regard to their individual circumstances. To do so would be inconsistent with the manner in which courts the world over have interpreted that term. *See Friedrich v. Friedrich*, 983 F.2d 1396, 1401 (6th Cir. 1993) (noting that Courts must "resist the temptation to develop detailed and restrictive rules as to habitual residence, which might make it as technical a term of art as common law domicile," focusing instead on the "facts and circumstances of each case") (quoting *In Re Bates*, No. CA

122.89, High Court of Justice, Family Div'n Ct. Royal Court of Justice, United Kingdom (1989)).

Finally, Respondent's proposed rule would disserve the purposes of both the Hague Convention and the Vienna Convention. The Hague Convention posits that the interests of children are paramount in custody proceedings, and best served by the adjudication of such proceedings in their country of habitual residence. *See Abbott*, 560 U.S. at 20.  Respondent's argument – that a parent's diplomatic status prevents a child from accruing "habitual residence" in a country, even if the child has in fact become acclimatized to that country – elevates a legal fiction above the presumed interests of children.  Respondent's rule would also prevent diplomats entitled to immunity under the Vienna Convention from recovering their own abducted children, rendering diplomats second-class parents.  Such a rule would hardly facilitate the smooth functioning of diplomatic missions.

As Respondent's argument at the hearing on this matter was vague, another possibility occurs: it may be that Respondent is claiming the Vienna Convention prevented Petitioner from enjoying custodial rights under Spanish law, and thus the removal of GTH and JWH from Spain was not wrongful under the law of that country.

If this is indeed what Respondent intended to argue, Respondent has again provided the Court with no authority to

9

support her position.  To the Court's knowledge, only one other case has addressed this issue.  In *Pliego v. Hayes*, 86 F. Supp. 3d 678 (W.D. Ky. 2015), the wife of a Spanish diplomat residing in Turkey abducted their son and brought him to the United States.  The diplomat filed a petition under the Hague Convention, and the court determined the child's habitual residence to be Turkey.  *See id*. at 696-97.  The court rejected the mother's argument that the father's diplomatic status prevented him from meaningfully possessing custodial rights in Turkey, reasoning that nothing in Turkish law precluded him from doing so.  *See id*. at 697-98.

   The Court agrees that this is the proper approach.  The Vienna Convention provides "absolute immunity from criminal prosecution and protection from most civil and administrative actions," which is to say immunity from the *enforcement* of local law.  *Tabion v. Mufti*, 73 F.3d 535, 537 (4th Cir. 1996).  In addition, diplomats are immune from the receiving state's "jurisdiction to prescribe" to the extent that laws effecting their position, such as laws regulating employment and national service, are "incompatible with . . . diplomatic status."  Restatement (Third) of Foreign Relations Law § 464 (1987).  Beyond this, however, "a diplomatic agent is subject to law generally" in the receiving state.  *Id*.  Diplomats and their families do not exist the legal "bubble" Respondent posits.

10

Respondent fails to explain how Spain's child custody laws are "incompatible with . . . diplomatic status." *Id*. The Court cannot see how they could be. Respondent's family was therefore subject to those laws at the time she allegedly abducted GTH and JWH.

## IV. Conclusion

Respondent does not presently enjoy diplomatic immunity in Spain, nor does her prior enjoyment of immunity warrant dismissing the instant Petition. As such, Respondent's Motion must be denied.

An appropriate order will issue.

|  | /s/ |
|---|---|
| January 10, 2017 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |